IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CANDICE RANA SULFRIDGE, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 3:05-cv-188 (Phillips/Guyton) |
| JOHN HUFF, LARRY G. MOORE, JANETTE HARRIS, TIMOTHY HUTCHISON, JOHN DOE I, JOHN DOE II, JOHN DOE III, JOHN DOE, IV, KNOX COUNTY, TENNESSEE, RANDY HINTON, and CHESTNUT STREET GARAGE, INC., | ) ) ) ) ) | |
| Defendants | ) | |

and

| | | |
|---|---|---|
| ADAM TRAVIS DAVIS, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 3:05-cv-202 (Phillips/Guyton) |
| JOHN HUFF, TIMOTHY HUTCHISON, JOHN DOE DEPUTY SHERIFFS, and KNOX COUNTY, TENNESSEE, | ) ) ) | |
| Defendants | ) | |

# **MEMORANDUM OPINION**

These two consolidated civil rights action were brought pursuant to 42 U.S.C. § 1983. The following motions are currently pending:

1. Defendant Knox County's motions for summary judgment [Court Files #147, #150];

2. Defendant Jeanette Harris' motion for summary judgment [Court File #148];

3. Defendant Larry Moore's motion for summary judgment [Court File #149];

4. Defendant John Huff's motion for summary judgment [Court File #153];

5. Defendant Timothy Hutchison's motion for protective order [Court File #189];

6. Plaintiffs' motion for additional time to respond to defendants' summary judgment motions [Court File #196]; and

7. Plaintiffs' motion to amend their complaints [Court File #205].

For the reasons that follow, these motions will be granted in part and denied in part.

I.

*Procedural Background*

Plaintiffs Candice Rana Sulfridge and Adam Travis Davis each filed separate civil rights lawsuits in this court and nearly identical claims in state court arising out of the

2

same incidents. The defendants removed the state court lawsuits to this court and all four lawsuits were consolidated in the interest of judicial economy. *See* Court File #46. This court has undisputed jurisdiction over the federal civil rights claims asserted under 42 U.S.C. § 1983. However, at a hearing on September 26, 2006, this court exercised its discretion to decline supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 and remanded all state law claims to state court [Court File #140]. Thus, the only remaining claims before the court are plaintiffs' federal civil rights claims under 42 U.S.C. §§ 1983 and 1988(a).

II.

*Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiffs and are taken from an affidavit and deposition testimony of plaintiff Candice Sulfridge.

On April 5, 2004, plaintiff Candice Sulfridge was riding in her own car, which was then being driven by her boyfriend, plaintiff Adam Travis Davis. They stopped at a Wal-Mart in North Knoxville. Cars were parked on both sides and in front of the car. Plaintiff Davis went into the Wal-Mart while plaintiff Sulfridge waited in the car in the passenger seat.

While plaintiff Sulfridge was waiting in the car, plaintiff Davis came out of the Wal-Mart and got into the driver's seat and began backing out of the parking space. In her affidavit, Ms. Sulfridge stated the following:

. . .

9. The person in uniform came to the side of the car.

10. I later learned that person was Knox County Sheriff Deputy John Huff.

11. As Deputy Huff was at the driver's side of the car, he was yelling and cussing at Adam.

12. Deputy Huff's [sic] was acting crazy, he was in a rage.

13. Deputy Huff was banging his gun on the car and on the window of the car.

14. I was scared and terrified by Deputy Huff's actions.

15. Adam began to back my car out of the parking space.

16. Deputy Huff walked along the car as Adam was backing it out of the space yelling Stop or I'll Shoot.

17. Adam stopped the car after backing out of the parking space.

18. Deputy Huff was standing to the left of the front left quarter panel of my car pointing his gun at Adam.

19. Adam put up his hands.

20. Deputy Huff shot one shot.

21. The front of my car was passed [sic] Deputy Huff when he shot the first shot.

>    22.    When Adam was shot by the first shot, the car rolled forward and Deputy Huff shot a second time.
>
>    23.    Deputy Huff was at a 90-degree angle to the driver's side window of the car and almost one-half of the car had passed him when he fired the second shot through the driver's window.

Affidavit of Candice Sulfridge at pp.2-3. Plaintiff Sulfridge states that Deputy Huff was always on the driver's side of the car when the two shots were fired and the car was never pointed at Deputy Huff. She states that to her knowledge the car did not touch Deputy Huff as Davis was pulling out of the parking space and Davis did not assault Deputy Huff.

Mr. Davis and Ms. Sulfridge drove out of the Wal-Mart parking lot and traveled "not even a half a mile." They pulled behind a pharmacy, Afton Drug Store, into an area that was unlit, dark and deserted. Mr. Davis got out of the car and was lying down and Ms. Sulfridge got out of the car and went around the car to "see about" Mr. Davis. It appears that Mr. Davis was hit by the second shot fired by Deputy Huff. Officers arrived approximately two or three minutes later. At the time the first officer arrived, Ms. Sulfridge was leaning over Mr. Davis.

When the officers arrived, they told Ms. Sulfridge and Mr. Davis to get on the ground. Ms. Sulfridge was handcuffed and placed in the back of a cruiser. While Ms. Sulfridge was in the cruiser, defendant Detective Larry Moore arrived, introduced himself, and asked her some questions, which she answered. Ms. Sulfridge testified at her deposition that Detective Moore was "Ok. He wasn't rude to me or anything" and did not touch her.

5

Sometime thereafter, Sheriff Hutchison arrived and instructed the officers to take the handcuffs off of Ms. Sulfridge.

Plaintiff Sulfridge was then taken by a deputy whose name she did not know to UT Hospital where Davis had been taken, and she was let out. Upon being asked if she saw Detective Moore again after he questioned her in the other officer's cruiser, Ms. Sulfridge said that she thought he was at the hospital and that she thought that he might have asked her if she was ok, but that was all. Detective Moore did not drive Ms. Sulfridge to the hospital. Ms. Sulfridge's car, which had been punctured by bullets, was seized by the officers at the scene.

The next day, Ms. Sulfridge called defendant Sergeant Jeanette Harris of the Knox County Sheriff's Department, whom she did not meet and has never met, to ask her how she could get her car back. Sergeant Harris told her that she could pick up her car at the Chestnut Street Garage. Ms. Sulfridge has not talked to Sergeant Harris on the phone since that day. Apparently, the vehicle was not at the Chestnut Street Garage, but at another garage, where the plaintiff picked up her car approximately two days later.

Plaintiff Davis was charged with and pled guilty to theft and aggravated assault, ultimately receiving a four-year sentence. The facts filed by Knox County pertaining to the criminal charges are contained in an affidavit of complaint for the warrant in General Sessions Court. Detective Larry Moore signed the affidavit on April 6, 2004, and apparently quoting Officer Huff, stated:

6

> The Defendant was at Wal-Mart located at 7340 Norris Freeway, when employees advised Officer Huff that the Defendant was shoplifting. Officer Huff gave chase to the Defendant on foot and came in contact with the Defendant at the Defendant's vehicle. Officer Huff identified himself as an officer and requested the Defendant to stop. The Defendant started his vehicle and fled, striking Officer Huff on the left thigh area with the vehicle while backing out of the parking space. The Defendant then put the vehicle in drive and drove toward Officer Huff, causing Officer Huff to jump out of the way to avoid being struck again.

Affidavit of Complaint by Detective Larry Moore.

III.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere

7

allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

IV.

*Defendant Knox County's Motion for Summary Judgment*

Plaintiff Davis contends that Officer Huff used excessive force by using deadly force against him at a time in which he was not posing a threat of serious bodily harm to either Officer Huff or others.

*Respondeat superior* is not available as a theory of recovery under § 1983. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). Rather, the plaintiff must show that the county itself was the wrongdoer. Under *Monell*, the county cannot be found liable unless plaintiff can establish that an officially executed policy, or the toleration of a custom, leads to, causes, or results in the deprivation of a constitutionally protected right. *Id.*, 436 U.S. at 690-91. To prevail against the county in a claim under § 1983, the primary question is has the plaintiff asserted the deprivation of a constitutional right at all. *Doe v. Claiborne*

8

*County, Tennessee*, 103 F.3d 495, 505 (6th Cir. 1996). The second question is whether the county is responsible for that violation. *Id.* at 506. For liability to attach, both questions must be answered in the affirmative. *Id.* at 507.

The County asserts that plaintiff Davis cannot, as a matter of law, establish either of these elements. Initially, the court notes that discovery has been stayed in this case because defendant Officer Huff has raised the issue of qualified immunity, which is discussed below. Thus, at this point, plaintiff has not been able to complete his discovery regarding the custom or policy of Knox County with respect to the use of deadly force.

Of course, if Davis cannot establish the first prong of the standard, that is, that a constitutional violation actually occurred, the County would be entitled to summary judgment irrespective of its custom or policy. The court finds that, at this point, a question of material fact remains with respect to whether Officer Huff may have used excessive force in shooting at plaintiff Davis.

The use of force in apprehending a fleeing criminal is based on the Fourth Amendment's "reasonableness" standard. The standard is an objective one, requiring the court to perform "a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The ultimate question is "whether

9

the totality of the circumstances justified a particular sort of search or seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

The United States Court of Appeals for the Sixth Circuit has made it clear that "the use of deadly force is constitutionally reasonable if the officer has probable cause to believe that the suspect poses a serious threat of physical harm either to the officer or to others." *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005). Thus, the question becomes whether Davis objectively posed a serious threat to Officer Huff or anyone else. Plaintiff contends that he did not; that he was simply driving away from Officer Huff at the time that both shots were fired. There is evidence in the record from which a reasonable jury could find that Officer Huff was next to the driver's side of plaintiff's vehicle at the time when both shots were fired. Under the circumstances, a reasonable jury could find that Officer Huff was not defending himself or someone else at the time that the shots were fired, but was attempting to halt a fleeing misdemeanant.

Based on the foregoing, the defendant Knox County's motions for summary judgment [Court Files #147, #150] will be denied. The County may renew its motion for summary judgment following discovery regarding Knox County's customs or policies with respect to the use of deadly force.

V.

*The Motion for Summary Judgment of Janette Harris*

Janette Harris is the officer who plaintiff Sulfridge spoke to on the telephone regarding the return of her vehicle. Apparently Officer Harris told the plaintiff that her automobile was located at the Chestnut Street Garage when it was actually at another location. There is no evidence in the record to indicate that this was anything other than a simple mistake nor would it implicate any of plaintiff's constitutional rights. Plaintiff has not responded to Officer Harris' motion for summary judgment. Accordingly, the motion for summary judgment of defendant Janette Harris [Court File #148] will be granted.

VI.

*The Motion for Summary Judgment of Detective Larry Moore*

Detective Larry Moore was assigned to investigate the incident. It appears that when Larry Moore arrived on the scene behind the drug store, Ms. Sulfridge was already in the back of a police cruiser with handcuffs on. There is no evidence in the record to indicate that Detective Moore was the one who placed Ms. Sulfridge in custody or in the back of a police cruiser or was one of the initial officers on the scene. It is undisputed that Moore merely questioned Ms. Sulfridge and was not abusive to her in any way. Sheriff Hutchison, who arrived on the scene thereafter, ordered other officers at the scene to take the handcuffs off of Ms. Sulfridge. The court finds no evidence in the record upon which a finding could

be made that Moore violated any of the plaintiff's constitutional rights. Accordingly, Detective Moore is also entitled to summary judgment.

VII.

*The Summary Judgment Motion of Defendant John Huff*

Defendant Officer Huff contends that he is entitled to summary judgment on the basis of qualified immunity. "Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The United States Court of Appeals for the Sixth Circuit has developed a three-step analysis for assessing qualified immunity defenses: It first determines (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred"; (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* at 901. "If the answer to all three questions is 'yes,' qualified immunity is not proper." *Id.*

Under the first step of the qualified immunity defense, taking the evidence in the light most favorable to the plaintiff, could there be a constitutional violation? If the facts are taken in the light most favorable to the plaintiff, that being the version of events which plaintiff Sulfridge described in her affidavit, Officer Huff could have violated defendant Davis' constitutional rights. Ms. Sulfridge stated that the first shot was fired after Davis had stopped backing up the vehicle and held his hands up. She stated that the second shot, which is apparently the one which struck Davis, was fired at approximately a 90-degree angle into the driver's side as Davis was passing by Officer Huff. She denies that the car was ever pointed at Officer Huff.

Under *Tennessee v. Garner*, 471 U.S. at 11, a police officer may use deadly force to prevent escape only "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* "[I]t is unreasonable for an officer to 'seize an unarmed common non-dangerous suspect by shooting him dead.'" *Brosseau v. Haugen*, 534 U.S. 194, 197 (2004) (*per curiam*). A question of material fact remains with respect to whether a reasonable officer in the position of defendant Huff had probable cause to believe that Davis posed a serious threat of physical harm, either to Huff or to anyone else.

The defendants contend that Davis' plea of guilty to aggravated assault collaterally or judicially estops him from alleging the use of excessive force by Officer Huff. Claim preclusion or issue preclusion could bar a § 1983 claim if in raising an excessive force

13

claim he was taking a position inconsistent with that which he took when he pled guilty to aggravated assault. *See DLX, Inc. v. Kentucky*, 381 F.3d 511 (6th Cir. 2004).

However, under the alleged facts, plaintiff's guilty plea in this case may not be inconsistent with his claim of excessive force. Here, there are two points at which Davis may have committed an aggravated assault. The first was when he was backing out of the parking space and grazed Officer Huff's thigh with the side of the car. The second was when he allegedly drove the car at Huff and Huff jumped out of the way. In either case, Huff fired at Davis after the alleged assault occurred and not to prevent it from occurring. There is nothing inconsistent about Davis taking the position that the aggravated assault to which he pled guilty occurred when he grazed Officer Huff's leg while Officer Huff stood beside the car as he backed out, and that any shots fired after that point, particularly the second one which hit the plaintiff, were not made in self-defense or defense of others. Accordingly, the court concludes that plaintiff Davis is not barred from alleging excessive force by Officer Huff under qualified immunity or judicial estoppel.

Second, the court must consider whether the right in question was clearly established. The United States Supreme Court has emphasized the importance of defining the right allegedly violated at the appropriate level of specificity, holding that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense" and that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Under *Tennessee v. Garner*, a police officer may use deadly force to prevent escape only "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." 471 U.S. 1, 11 (1985). Moreover, the Knox County Sheriff's Department's use of deadly force guidelines specifically provide that the use of deadly force, at least under the facts as alleged by the plaintiffs, would be impermissible and provide that Officer Huff's actions would have been excessive. Those guidelines provide:

> (4) At T.C.A. § 39-11-620 (1991), the State has placed certain restrictions/limitations on the use of deadly force by law enforcement officers:
>
> (a) A law enforcement officer, after giving notice of his identity as such, may use or threaten to use force as is reasonably necessary to accomplish the arrest of an individual suspected of a criminal act who resists or flees from the arrest.
>
> (b) Notwithstanding subsection (a), the officer may use deadly force to effect an arrest only if all other reasonable means of apprehension have been exhausted or are unavailable, and where feasible, the officer has given notice of his identity as such and given a warning that deadly force may be used unless resistance or flight ceases, and;
>
>> (1) The officer has probable cause to believe the individual to be arrested has committed a felony involving the infliction of serious bodily injury; or
>>
>> (2) The officer has probable cause to believe that the individual to be arrested poses a threat of serious bodily injury, either to the officer or to others unless immediately apprehended.

15

Thus, the written guidelines adopted by the Knox County Sheriff's Department track those set out in *Tennessee v. Garner*. In addition, the Knox County Sheriff's Department guidelines provide as follows:

> (5) No officer, except in direct defense of his or another's life, will fire any weapon at <u>or</u> from a moving vehicle.

The court concludes that the right in question was clearly established.

Lastly, based on the testimony of plaintiff Sulfridge, plaintiff Davis has offered sufficient evidence to indicate that the shots fired by Huff were objectively unreasonable in light of clearly established constitutional rights. Accordingly, the motion for summary judgment of defendant Huff will be denied.

## VIII.

### *Miscellaneous Motions*

Sheriff Tim Hutchison has filed a motion for protective order to prohibit plaintiffs' counsel from asking any questions of him other than questions as to what occurred in his presence on the night of April 5, 2005 [Court File #189]. Sheriff Hutchison is no longer a party to this lawsuit, nor is there any evidence that he has information relevant to this lawsuit other than what occurred in his presence on April 5, 2005. Plaintiffs have failed to respond to this motion in a timely manner and are therefore deemed to have waived any response. Rule 7.2, Local Rules for the United States District Court for the Eastern District of Tennessee. Accordingly, Sheriff Hutchison's motion will be granted, and plaintiffs will

be directed to limit the questioning of him to events occurring in his presence on April 5, 2005.

Plaintiffs' renewed motion for additional time to respond to defendants' summary judgment motions [Court File #196] and motion to amend complaints [Court File #205] will be granted.

IX.

*Conclusion*

In light of the foregoing, Knox County's motions for summary judgment [Court Files #147, #150] will be denied; defendant Janette Harris' motion for summary judgment [Court File #148] will be granted; defendant Larry Moore's motion for summary judgment [Court File #149] will be granted; defendant John Huff's motion for summary judgment [Court File #153] will be denied; Sheriff Tim Hutchison's motion for protective order [Court File #189] will be granted; plaintiffs' renewed motion for additional time to respond to defendants' summary judgment motions [Court File #196] will be granted; and plaintiffs' motion to amend complaints [Court File #205] will be granted.

Order accordingly.

                                                  *s/ Thomas W. Phillips*
                                                  UNITED STATES DISTRICT JUDGE